# EXHIBIT A

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

OLD NAVY, LLC; OLD NAVY (APPAREL), LLC; OLD NAVY HOLDINGS, LLC;
GPS SERVICES, INC.; THE GAP, INC.; and DOES 1-20, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

ANASTASHA BARBA and BRENDA TRIPICCHIO, for Themselves, as Private
Attorney Generals, and/or On Behalf Of All Others Similarly Situated

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* San Francisco Superior Court<br>400 McAllister Street, San Francisco CA 94102 | CASE NUMBER:<br>*(Número del Caso):* CGC-19-577743 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Daniel M. Hattis, Esq., 1401 Twenty-First Street, Ste 400, Sacramento, CA 95811 (425) 233-8650

| DATE: JUL 1 8 2019 | CLERK OF THE COURT | Clerk, by S. Sclmn | , Deputy |
|---|---|---|---|
| *(Fecha)* | | *(Secretario)* | *(Adjunto)* |

SANDRA L. SCHIRO

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

BY FAX  ONE LEGAL LLC

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

  under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
         ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
         ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
         ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

[SEAL] SUPERIOR COURT OF CALIFORNIA COUNTY OF SAN FRANCISCO — EUREKA

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courtinfo.ca.gov*

Daniel M. Hattis (SBN 232141)
Paul Karl Lukacs (SBN 197007)
HATTIS & LUKACS
1401 Twenty-First Street, Suite 400
Sacramento, CA 95811
Telephone: (425) 233-8650
Facsimile: (425) 412-7171
Email: dan@hattislaw.com
Email: pkl@hattislaw.com

Stephen P. DeNittis, Esq. (Pro Hac Vice forthcoming)
Shane T. Prince, Esq. (Pro Hac Vice forthcoming)
DENITTIS OSEFCHEN PRINCE, P.C.
5 Greentree Centre, Suite 410
525 Route 73 N.
Marlton, New Jersey 08057
Telephone: (856) 797-9951
Facsimile: (856) 797-9978
Email: sdenittis@denittislaw.com
Email: sprince@denittislaw.com

*Attorneys for Plaintiffs and the Proposed Class*

**F I L E D**

San Francisco County Superior Court

JUL 18 2019

CLERK OF THE COURT
BY: Sandra ____
Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### CITY AND COUNTY OF SAN FRANCISCO

#### UNLIMITED CIVIL

CGC-19-577743

| | |
|---|---|
| ANASTASHA BARBA and BRENDA TRIPICCHIO, for Themselves, as Private Attorney Generals, and/or On Behalf Of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>OLD NAVY, LLC;<br>OLD NAVY (APPAREL), LLC;<br>OLD NAVY HOLDINGS, LLC;<br>GPS SERVICES, INC.;<br>THE GAP, INC.;<br>and DOES 1-20, inclusive,<br><br>Defendants. | Case No. _____<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR:**<br><br>1. **Violation of Consumers Legal Remedies Act, Cal. Civ. Code § 1750** *et seq.*<br><br>2. **Violation of False Advertising Law, Cal. Bus. & Prof. Code § 17500** *et seq.*<br><br>3. **Violation of Unfair Competition Law, Cal. Bus. & Prof. Code § 17200** *et seq.*<br><br>4. **Permanent Public Injunctive Relief**<br><br>5. **Violation of New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1,** *et seq.*<br><br>6. **Violation of the New Jersey Truth in Consumer Contract, Warranty and Notice Act, N.J.S.A. § 56:12-14,** *et seq.*<br><br>**JURY TRIAL DEMANDED** |

BY FAX
ONE LEGAL LLC

HATTIS & LUKACS
1401 Twenty-First Street, Suite 400
Sacramento, CA 95811
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1    Plaintiffs ANASTASHA BARBA and BRENDA TRIPICCHIO, individually, as private

2  attorneys general, and/or on behalf of all others similarly situated, allege as follows, on

3  personal knowledge and/or on the investigation of their counsel, against Defendants Old Navy,

4  LLC, Old Navy (Apparel), LLC, Old Navy Holdings, LLC, GPS Services, Inc., and The Gap,

5  Inc. (collectively, "Old Navy"), and Defendants Does 1-20, inclusive:

6  **I.    INTRODUCTION AND SUMMARY**

7    1.    Old Navy calls itself "one of the fastest-growing apparel brands in the U.S. and

8  category leader in family apparel." Almost all the items offered by Old Navy are branded as

9  "Old Navy" products, and are exclusively offered by Old Navy. Approximately 80% of Old

10  Navy's $7.2 billion annual U.S. sales are in its brick-and-mortar Old Navy and Old Navy

11  Outlet stores, and the remaining 20% of its sales are online on its retail website.

12    2.    For years, Old Navy has perpetrated a massive false discount advertising scheme

13  across nearly all of its Old Navy-branded products, across all of its sales channels (i.e, in all of

14  its brick-and-mortar Old Navy and Old Navy Outlet stores, and on the Old Navy website). Old

15  Navy advertises perpetual or near perpetual discounts (typically a purported savings of 30% to

16  60% off) from Old Navy's self-created list prices for the products. Old Navy represents its list

17  prices to be the "regular" and normal prices of the items, and the list prices function as

18  reference prices from which the advertised discounts and percentage-off sales are calculated.

19    3.    Old Navy's discounts and reference prices are false, because Old Navy rarely if

20  ever offers the products at the advertised list price. Old Navy invents inflated and fictitious list

21  prices in order to enable it to advertise perpetual store-wide "sale" events and product discounts

22  to induce customers to purchase its products. Old Navy's marketing plan is to trick its

23  customers into believing that its products are worth, and have a value equal to, the inflated list

24  price, and that the lower advertised sale price represents a special bargain—when in reality and

25  unbeknownst to the customer, the "sale" price is approximately equal to Old Navy's usual and

26  normal selling price for the product.

27    4.    Old Navy's nationwide fraudulent advertising scheme harms consumers like

28  Plaintiffs Anastasha Barba and Brenda Tripicchio by causing them to pay more than they

CLASS ACTION COMPLAINT

- 2 -

1    otherwise would have paid and to buy more than they otherwise would have bought. Customers

2    do not enjoy the actual discounts Old Navy represents to them, and the products are not in fact

3    worth the inflated amount that Old Navy represents to them (i.e., the products are not actually

4    worth the fictitious and invented list price).

5        5.    Consequently, Plaintiffs bring this action each individually on their own

6    behalves as deceived Old Navy customers; as private attorneys general seeking the imposition

7    of public injunctive relief against Defendants; and as representative plaintiffs in this class

8    action seeking, among other things, to recover damages and/or that Defendants be ordered to

9    disgorge all revenues they have unjustly received from the proposed Class due to their

10   intentional and unlawful pattern and practice of using false reference prices and false discounts.

11   **II.    PARTIES**

12       6.    Plaintiff Anastasha Barba is a citizen of the United States of America and a

13   citizen of the State of California and an individual and a natural adult person who resides in

14   Sacramento County, California.

15       7.    Plaintiff Brenda Tripicchio is a citizen of the United States of America and a

16   citizen of the State of New Jersey and an individual and a natural adult person who resides in

17   Burlington County, New Jersey.

18       8.    Defendant Old Navy, LLC, is a wholly-owned subsidiary of The Gap, Inc., and

19   is a limited liability company chartered under the laws of the State of Delaware. Old Navy,

20   LLC, currently has and at all relevant times in the past has had its headquarters, executive

21   office, principal place of business, or nerve center in San Francisco, California.

22       9.    Defendant Old Navy (Apparel), LLC, is a wholly-owned subsidiary of GPS

23   Services, Inc., and is a limited liability company chartered under the laws of the State of

24   California. Old Navy (Apparel), LLC, currently has and at all relevant times in the past has had

25   its headquarters, executive office, principal place of business, or nerve center in San Francisco,

26   California.

27       10.   Defendant Old Navy Holdings, LLC, is a limited liability company chartered

28   under the laws of the State of California. Old Navy Holdings, LLC, currently has and at all

CLASS ACTION COMPLAINT

- 3 -

1  relevant times in the past has had its headquarters, executive office, principal place of business,

2  or nerve center in San Francisco, California.

3        11.     Defendant GPS Services, Inc., is a wholly-owned subsidiary of The Gap, Inc.,

4  and is a corporation chartered under the laws of the State of California. GPS Services, Inc.,

5  currently has and at all relevant times in the past has had its headquarters, executive office,

6  principal place of business, or nerve center in San Francisco, California.

7        12.     Defendants Old Navy, LLC, Old Navy (Apparel), LLC, Old Navy Holdings,

8  LLC, GPS Services, Inc., and The Gap, Inc. (collectively, "Old Navy"), own and/or operate

9  approximately 1,100 brick-and-mortar Old Navy and Old Navy Outlet retail stores throughout

10  the United States, including California and New Jersey. Defendants also own and/or operate a

11  retail website http://oldnavy.gap.com, by which Defendants advertise and sell their goods, with

12  said website being regularly seen and used by consumers throughout the United States to

13  purchase goods from Old Navy.

14        13.     Defendants Doe 1 through Doe 20, inclusive, aided and/or abetted Defendants

15  Old Navy, LLC, Old Navy (Apparel), LLC, Old Navy Holdings, LLC, GPS Services, Inc.,

16  and/or The Gap, Inc., in such a manner that Doe 1 through Doe 20, inclusive, are each directly,

17  contributorily, vicariously, derivatively and/or otherwise liable for the acts or omissions of Old

18  Navy pled herein. Plaintiffs are currently unaware of the true identities of Does 1 through Doe

19  20, inclusive; upon learning the true identities of Does 1 through Doe 20, inclusive, Plaintiffs

20  anticipate either freely amending the operative complaint or requesting leave from the Court to

21  amend the operative complaint.

22  **III.    JURISDICTION AND VENUE**

23        14.     **Subject Matter Jurisdiction.** This Court has subject matter jurisdiction over

24  this civil action pursuant to, among other bases, Section 10 of Article VI of the California

25  Constitution.

26        15.     **Personal Jurisdiction.** This Court has personal jurisdiction over Defendants

27  pursuant to, among other bases, California Code of Civil Procedure Section 410.10 because: (1)

28  Defendants are headquartered in California and are authorized to do business and regularly

CLASS ACTION COMPLAINT

- 4 -

**HATTIS & LUKACS**
1401 Twenty-First Street, Suite 400
Sacramento, CA 95811
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1  conduct business in California; (2) the claims alleged herein took place in California; and/or (3)

2  Defendants have committed tortious acts within the State of California (as alleged, without

3  limitation, throughout this Complaint).

4       16.    Defendants own and/or operate approximately 96 brick-and-mortar Old Navy

5  and Old Navy Outlet retail stores in California and operate the Old Navy website, by which Old

6  Navy advertises and sells its goods, with said website being regularly seen by California

7  consumers and being regularly used by California consumers to purchase goods from Old

8  Navy.

9  **IV.**    **REFERENCE PRICING OVERVIEW**

10       17.    A "reference price" is a stated higher price presented alongside the retailer's

11  actual, and lower, offering price, which retailers use to convince consumers that they are

12  getting a good deal. Retailers intend that consumers interpret the higher reference price to

13  reflect the value of the product, such that the consumer believes he or she is getting a special

14  bargain and paying less than what the product is worth and usually and normally sells for.

15       18.    Over the past forty years, a substantial body of research on the effects of

16  reference prices (also referred to in the relevant literature as "advertised reference prices,"

17  "advertised former prices," and "external reference prices") shows that reference prices: (i)

18  cause consumers to believe that the higher reference reflects the value of the product; (ii)

19  increase consumers' willingness to make the purchase; (iii) decrease consumers' intentions to

20  search for a lower price; and (iv) enable sellers that utilize reference prices to charge higher

21  prices and make increased sales.

22       19.    Consumers form an "internal reference price," also known as an "expected

23  price," an "aspirational price" (a price the consumer would like to pay) or a "normative price"

24  (a price that is "fair"). Consumers store and retrieve the "internal reference price" from memory

25  to judge the merits of a specific price offer. Even where an advertised reference price is

26  exaggerated and not itself completely believed, perceptions of value increase in comparison to

27  a promotion with no advertised reference price. Thus, retailers' use of reference prices

28  influences consumers' "internal reference price" and subsequently, increases consumers'

HATTIS & LUKACS
1401 Twenty-First Street, Suite 400
Sacramento, CA 95811
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1   willingness to purchase the product.[1]

2       20.    When a reference price is bona fide and truthful, it may help consumers in

3   making informed purchasing decisions. In contrast, consumers are harmed when retailers

4   advertise their products with inflated and false reference prices, because the false reference

5   prices deceive consumers, deprive consumers of a fair opportunity to accurately evaluate the

6   offer, and result in purchasing decisions based on false pretenses.

7       21.    False reference pricing causes consumers to pay more than they otherwise

8   would have paid for products. False reference pricing also fraudulently increases consumer

9   demand for products, enabling retailers to charge higher prices than they otherwise could have

10   charged.

11       22.    Beyond the adverse impact upon consumers' welfare, the practice of employing

12   false reference pricing also negatively affects the integrity of competition in retail markets. A

13   retailer's use of false reference prices constitutes an unfair method of competition, injuring

14   honest competitors that sell the same or similar products, or otherwise compete in the same

15   market, using valid and accurate reference prices. Businesses who play by the rules—and the

16   investors in those businesses—are penalized if the unlawful advertising practices of their

17   competitors go unchecked.

18

19

20

21

22

23

24

25

26

27

28

[1] See, *e.g.*, Rajesh Chandrashekaran & Dhruv Grewal, *Assimilation of Advertised Reference Prices: The Moderating Role of Involvement*, 79 J. Retailing 53 (2003); Pilsik Choi & Keith S. Coulter, *It's Not All Relative: The Effects of Mental and Physical Positioning of Comparative Prices on Absolute Versus Relative Discount Assessment*, 88 J. Retailing 512 (2012); Larry D. Compeau & Dhruv Grewal, *Comparative Price Advertising: An Integrative Review,* 17 J. Pub. Pol'y & Mktg. 257 (1998); Larry D. Compeau, Dhruv Grewal & Rajesh Chandrashekaran, *Comparative Price Advertising: Believe It or Not*, 36 J. Consumer Aff. 284 (2002); David Friedman, *Reconsidering Fictitious Pricing*, 100 Minn. L. Rev. 921 (2016); Dhruv Grewal & Larry D. Compeau, *Consumer Responses to Price and its Contextual Information Cues: A Synthesis of Past Research, a Conceptual Framework, and Avenues for Further Research*, in 3 Rev. of Mktg. Res. 109 (Naresh K. Malhotra ed., 2007); Daniel J. Howard & Roger A. Kerin, *Broadening the Scope of Reference Price Advertising Research: A Field Study of Consumer Shopping Involvement*, 70 J. Mktg. 185 (2006); Aradhna Krishna, Richard Briesch, Donald R. Lehmann & Hong Yuan, *A Meta-Analysis of the Impact of Price Presentation on Perceived Savings*, 78 J. Retailing 101 (2002); Balaji C. Krishnan, Sujay Dutta & Subhash Jha, *Effectiveness of Exaggerated Advertised Reference Prices: The Role of Decision Time Pressure*, 89 J. Retailing 105 (2013); and Tridib Mazumdar, S. P. Raj & Indrahit Sinha, *Reference Price Research: Review and Propositions*, 69 J. Mktg. 84 (2005).

HATTIS & LUKACS
1401 Twenty-First Street, Suite 400
Sacramento, CA 95811
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1  **V.    LAWS PROHIBITING FALSE REFERENCE PRICING**

2      23.    The consumer protection laws of California, like those of other states as well as

3  federal regulations, prohibit the advertising of false former prices and deceptive claims of

4  percentage-off discounts and specified dollar discounts that are based on inflated and fictitious

5  "regular" prices.

6      24.    California's Unfair Competition Law and False Advertising Law generally

7  forbid unfair business practices and false advertising (i.e., Cal. Bus. and Prof. Code §§ 17200 *et*

8  *seq.* and 17500 *et seq.*). Regarding sales to consumers for household purposes, the California

9  Consumers Legal Remedies Act prohibits "[m]aking false or misleading statements of fact

10 concerning reasons for, existence of, or amounts of, price reductions." Cal. Civ.

11 Code § 1770(a)(13).

12     25.    California law specifically recognizes the abuses which can flow from the use of

13 fictitious former prices and false claims of discounts based on such prices. *See e.g. Hinojos v.*

14 *Kohl's Corp.*, 718 F.3d 1098, 1101 (9th Cir. 2013):

15          Most consumers have, at some point, purchased merchandise that was marketed
            as being "on sale" because the proffered discount seemed too good to pass up.
16          Retailers, well aware of consumers' susceptibility to a bargain, therefore have an
            incentive to lie to their customers by falsely claiming that their products have
17          previously sold at a far higher "original" price in order to induce customers to
            purchase merchandise at a purportedly marked-down "sale" price. Because such
18          practices are misleading – and effective – the California legislature has
            prohibited them.

19 *See also Hansen v. Newegg.com Americas, Inc.*, 25 Cal.App.5th 714, 730 (2018):

20          Our Legislature has adopted multiple statutes that specifically prohibit the use of
            deceptive former price information and misleading statements regarding the
21          amount of a price reduction. ... These statutes make clear that ... our Legislature
            has concluded "reasonable people can and do attach importance to [a product's
22          former price] in their purchasing decisions." (alterations in original) (quoting
            *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 892 (Cal. 2011)).
23

24     26.    Other states, including New Jersey, have similar laws forbidding deceptive

25 advertising including advertising false former prices and false discounts. *See e.g.,* N.J.A.C. §

26 13:45A-9.6 ("Pricing; prohibition on fictitious pricing and methods of substantiation") and §

27 13:45A-9.3(a)(3) (additional requirements regarding items with a price of less than $100); New

28 Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, *et seq.*; and New Jersey Truth in Consumer

---

CLASS ACTION COMPLAINT

- 7 -

1  Contract, Warranty and Notice Act, N.J.S.A. § 56:12-16, *et seq.*

2        27.     Federal regulations also prohibit false advertising of false former prices and

3  false discounts. The Federal Trade Commission ("FTC") describes false former price schemes,

4  similar to Old Navy's in all material respects, as deceptive:

5        (a) One of the most commonly used forms of bargain advertising is to offer a
   reduction from the advertiser's own former price for an article. If the former

6  price is the actual, bona fide price at which the article was offered to the public
   on a regular basis for a reasonably substantial period of time, it provides a

7  legitimate basis for the advertising of a price comparison. Where the former
   price is genuine, the bargain being advertised is a true one. If, on the other hand,

8  the former price being advertised is not bona fide but fictitious—for example,
   where an artificial, inflated price was established for the purpose of enabling the

9  subsequent offer of a large reduction—the "bargain" being advertised is a false
   one; the purchaser is not receiving the unusual value he expects. In such cases,

10  the "reduced price" is, in reality, probably just the seller's regular price.

11        (b) A former price is not necessarily fictitious merely because no sales at the
   advertised price were made. The advertiser should be especially careful,

12  however, in such a case, that the price is one at which the product was <u>openly
   and actively offered for sale, for a reasonably substantial period of time, in the</u>

13  <u>recent, regular course of his business, honestly and in good faith -- and, of
   course, not for the purpose of establishing a fictitious higher price on which a</u>

14  <u>deceptive comparison might be based</u>…

15        (c) The following is an example of a price comparison based on a fictitious
   former price. John Doe is a retailer of Brand X fountain pens, which cost him $5

16  each. His usual markup is 50 percent over cost; that is, his regular retail price is
   $7.50. In order subsequently to offer an unusual "bargain", Doe begins offering

17  Brand X at $10 per pen. He realizes that he will be able to sell no, or very few,
   pens at this inflated price. But he doesn't care, for he maintains that price for

18  only a few days. Then he "cuts" the price to its usual level – $7.50 – and
   advertises: "Terrific Bargain: X Pens, Were $10, Now Only $7.50!" This is

19  obviously a false claim. The advertised "bargain" is not genuine.

20        (d) Other illustrations of fictitious price comparisons could be given. An
   advertiser might use a price at which he never offered the article at all; he might

21  feature a price which was not used in the regular course of business, or which
   was not used in the recent past but at some remote period in the past, without

22  making disclosure of that fact; he might use a price that was not openly offered
   to the public, or that was not maintained for a reasonable length of time, but was

23  immediately reduced.

24  16 C.F.R § 233.1 (FTC Pricing Guides: Former Price Comparisons) (emphasis added).

25

26

27

28

---

CLASS ACTION COMPLAINT

- 8 -

HATTIS & LUKACS
1401 Twenty-First Street, Suite 400
Sacramento, CA 95811
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

VI.  **FACTUAL ALLEGATIONS OF OLD NAVY'S NATIONWIDE SCHEME**

28.  Old Navy, which is headquartered in San Francisco, California, is a popular retailer which calls itself "one of the fastest-growing apparel brands in the U.S. and category leader in family apparel."

29.  Old Navy currently operates approximately 1,100 brick-and-mortar Old Navy and Old Navy Outlet retail stores throughout the United States, including 96 in California and at least 31 in New Jersey.

30.  Old Navy also operates a retail website at http://oldnavy.gap.com, by which Old Navy advertises and sells its goods, which is regularly seen and used to purchase goods from Old Navy by consumers throughout the United States, including California and New Jersey.

31.  Almost all the items offered by Old Navy are branded as "Old Navy" products and are exclusively offered by Old Navy in its retail stores and on its website. I.e., the products offered by Old Navy are not offered by, and are not available from, any other retailer.

32.  Approximately 80% of Old Navy's $7.2 billion annual U.S. sales are in its brick-and-mortar Old Navy and Old Navy Outlet stores, and the remaining 20% of its sales are online on its retail website.

33.  For years, Old Navy has perpetrated a massive false reference pricing scheme across almost all of its products, both in its brick-and-mortar stores and on its website. Old Navy advertises perpetual or near perpetual discounts (typically a purported savings of 30% to 60% off) from Old Navy's self-created list prices for the products. Old Navy represents its list prices to be the "regular" and normal prices of its products, and the list prices function as reference prices from which the advertised discounts and percentage-off sales are calculated.

34.  Old Navy's discounts and reference prices are false, because Old Navy rarely if ever offers the products at the advertised list price. Old Navy invents inflated and fictitious list prices out of thin air in order to enable it to advertise perpetual store-wide "sale" events and product discounts to induce customers to purchase its products. Old Navy's marketing plan is to trick its customers into believing that its products are worth and have a value equal to the inflated list price, and that the lower advertised sale price represents a special bargain—when in

CLASS ACTION COMPLAINT

- 9 -

HATTIS & LUKACS
1401 Twenty-First Street, Suite 400
Sacramento, CA 95811
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

reality and unbeknownst to the customer, the "sale" price is approximately equal to Old Navy's usual and normal selling price for the product.

35.     In short, Old Navy promises a bargain to its customers in which the customer will receive a product worth the reference price printed in its advertising and on the product price tag, and in which the customer will receive a monetary savings equal to the difference between the reference price and the purchase price. In reality, however, the true value of the product is less than the false and inflated reference price, and customers do not save the amount of money advertised and represented by Old Navy.

36.     For most days of the year, Old Navy advertises store-wide and website-wide sales of most of its Old Navy-branded products at a fixed percentage-off (typically ranging from 30% to 60% off) or at a specified dollar discount from an advertised—and self-created—list price. The specific amounts of the dollar discount or percentage-off may slightly change over time, but the existence of a significant discount is perpetual. Products are rarely if ever offered, in any Old Navy sales channel, at the list price.

37.     Below are photographs taken at a San Francisco Old Navy store on March 29, 2019, which are representative of in-store advertising at a typical store "sale" event:

HATTIS & LUKACS
1401 Twenty-First Street, Suite 400
Sacramento, CA 95811
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1

## "Old Navy" Store, San Francisco, CA on March 28, 2019






38.    In this example, Old Navy advertises a store-wide "sale into spring" event with "All Tees, Dresses & Jeans 40% off." Signage on the racks above the clothing items prominently advertises "SALE" and "NOW 40% off", with the "NOW" in bold red lettering. The signage also explicitly represents the list price as being the "REG." (i.e., regular) price for the clothing items. The temporal nature of the advertising (e.g., the products are "NOW" on sale from the "REG." price) is intended by Old Navy to trick its customers into believing that the products have a value of, and are usually sold at, the list prices printed on the product tags and on the in-store signage, and that the purported "sale" price represents a special and limited-time bargain.

39.    In fact, the price and discount representations on the signage and on the product

CLASS ACTION COMPLAINT

- 11 -

HATTIS & LUKACS
1401 Twenty-First Street, Suite 400
Sacramento, CA 95811
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1 price tags are false and misleading, because the purportedly "sale" prices are in fact
2 approximately equal to Old Navy's usual selling prices for the items and the products are not in
3 fact worth the higher list price as Old Navy falsely represents.

4    40.    Plaintiffs' counsel has been monitoring Old Navy's website since October 15,
5 2017, and has assembled a comprehensive historical database of daily prices and time-stamped
6 screenshots of approximately 5.1 million daily offerings for approximately 41,605 products
7 over this nearly three-year period.

8    41.    Plaintiffs' counsel's data demonstrates that Old Navy's advertised store-wide
9 "sale" events and advertised percentage-off and dollar discounts are false, and that its list prices
10 (i.e., reference prices) from which the discounts are calculated are false and inflated. For many
11 products, Old Navy never or almost never offers the products at the list price. For the rest of its
12 products, Old Navy typically offers the products at the list price less than ten percent of the
13 time.

14    42.    Old Navy's false discounting scheme is for all intents and purposes identical to
15 that which the FTC Pricing Guides describe as false and misleading. *See* 16 C.F.R § 233.1
16 "Former Price Comparisons."

17    43.    Based on investigation of Plaintiffs' counsel, on those rare occasions that Old
18 Navy offers its near-perpetually discounted products at the list price, it does so in bad faith,
19 solely for the purpose of "establishing" its list price to attempt to exculpate itself from legal
20 liability for its illegal pricing scheme. It is Old Navy's intent to sell few if any products at list
21 price, and in fact Old Navy sells few if any products at list price.

22    44.    Based on investigation of Plaintiffs' counsel, brick-and-mortar Old Navy
23 mainline stores and Old Navy Outlet stores are substantially identical and are for all intents and
24 purposes the same. The mainline and outlet stores typically advertise the same store-wide
25 "sale" events, and consistently offer identical products with identical list prices at substantially
26 the same sales prices. In addition, the Old Navy mainline stores and the Old Navy Outlet stores
27 have substantially the same physical layout and offer substantially the same the customer
28 experience. Plaintiffs' counsel's findings are consistent with the findings of investigative

1  journalists in Pittsburg, Pennsylvania, who compared products and prices at Old Navy and Old

2  Navy Outlet stores and found them to be the same. *See* Highfield, David, "Outlet v. Retail

3  Shopping: Experts Compare, Contrast Quality & Price," CBS Pittsburgh, February 19, 2016.[2]

4      45.    Below are two photographs which illustrate how the mainline Old Navy stores

5  and the Old Navy Outlet stores advertise the identical sales events and utilize the same sale

6  event signage. The left photograph was taken on May 22, 2019, of the window signage at the

7  Old Navy Outlet store in Auburn, Washington; the right photograph was taken the next day,

8  May 23, 2019, of the window signage at the Old Navy store in Marlton, New Jersey. The

9  signage is virtually identical, and advertises the same "SALE-SATIONAL" store event during

10  which Old Navy is purportedly offering "50% OFF ALL TEES, TANKS, SHORTS & SWIM":

11  
12  

| **"Old Navy Outlet" Store**<br>**Auburn, WA on May 22, 2019** | **"Old Navy" Store**<br>**Marlton, NJ on May 23, 2019** |
|:---:|:---:|
|  |  |

24      46.    Substantially the same products are available and advertised at "50% OFF" at,

25  simultaneously, both this mainline Old Navy store and this Old Navy Outlet store, which are

26  across the country from each other. But in fact, the advertised discount at both stores of "50%

27  
28  [2] Available at https://pittsburgh.cbslocal.com/2016/02/19/outlets-vs-retail-shopping-experts-compare-contrast-quality-price/.

CLASS ACTION COMPLAINT      - 13 -

1    OFF" is false and misleading, because the products are not in fact discounted 50% from their

2    normal and usual prices. Old Navy consistently and perpetually offers the products at a

3    significant discount from their inflated and fictitious list prices at both the Old Navy store and

4    the Old Navy Outlet store.

5        47.    Also, based on investigation of Plaintiffs' counsel, Old Navy offers the same

6    products and pricing both online and in-store. Old Navy offers identical products with identical

7    list prices at substantially the same sales prices—and advertised with the same purported

8    discounts—in all of its sales channels (i.e., online on the Old Navy website, and in-store at the

9    Old Navy and Old Navy Outlet brick-and-mortar stores). The photographs below demonstrate

10   how Old Navy's list prices, sales prices, and advertised purported discounts are substantially

11   the same both online and in-store:

| "Old Navy" Store<br>San Francisco on May 22, 2019 | Old Navy Website<br>May 22, 2019 |
|---|---|
| Mid-Rise Rockstar Super Skinny Step-Hem Jeans<br>Sale Price: $24.00; List Price $39.99 | Mid-Rise Rockstar Super Skinny Step-Hem Jeans<br>Sale Price: $24.00; List Price $39.99 |



48.    The left photograph was taken at the Old Navy mainline store in San Francisco,

California, on May 22, 2019. It shows Old Navy was offering the Mid-Rise Rockstar Super

HATTIS & LUKACS
1401 Twenty-First Street, Suite 400
Sacramento, CA 95811
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

Skinny Step-Hem Jeans "**NOW** 40% off" from the "REG." price of $39.99. The purported

regular price, i.e., the list price, of $39.99 is printed on both the signage and on the price tag

attached to the jeans. The right screenshot was taken the same day on May 22, 2019, on the Old

Navy website on the product webpage for the same pair of jeans. On the website, Old Navy

advertises the identical $39.99 reference price (with a strike-through), and advertises the

identical $24.00 "sale" price (calling it a "Hot Deal!").

49.     The price and discount representations regarding the jeans on the in-store

signage and price tag, and on the product webpage on the Old Navy website, are false and

misleading because the purported "sale" price is in fact approximately equal to Old Navy's

usual selling price for the jeans, and the jeans are not in fact worth, and do not have a value

equal to, the $39.99 list price.

50.     Below is another example demonstrating how Old Navy's list prices, sales

prices, and advertised purported discounts are substantially the same both online and in-store:

CLASS ACTION COMPLAINT

- 15 -

**HATTIS & LUKACS**
1401 Twenty-First Street, Suite 400
Sacramento, CA 95811
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

| "Old Navy" Store Bellevue, WA on April 19, 2019 | Old Navy Website April 19, 2019 |
|---|---|
| Flutter-Sleeve Jersey Swing Dress Sale Price: $15.00; List Price $29.99 | Flutter-Sleeve Jersey Swing Dress Sale Price: $15.00; List Price $29.99 |



51.     The left photograph was taken at the Old Navy mainline store in Bellevue, Washington, on April 19, 2019. It shows Old Navy was offering the Flutter-Sleeve Jersey Swing Dress **"NOW 50% OFF"** from the reference price of $29.99 printed on the tag. The right screenshot was taken the same day on April 19, 2019, on the Old Navy website on the product webpage for the same dress. On the website, Old Navy advertises the identical $29.99 list price (with a strike-through), and offers the identical stated "50% Off" discount and $15.00 "sale" price.

52.     The price and discount representations regarding the dress on the in-store signage and price tag, and on the product webpage on the Old Navy website, are false and misleading because the purported "50% Off" sale price is in fact approximately equal to Old

CLASS ACTION COMPLAINT

- 16 -

HATTIS & LUKACS
1401 Twenty-First Street, Suite 400
Sacramento, CA 95811
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1 | Navy's usual selling price for the dress, and the dress is not in fact worth, and does not have a

2 | value equal to, the $29.99 list price.

3 | 53.   Old Navy perpetrates this false discount and false reference price scheme across

4 | all of its retail channels and across nearly all of its products in order to induce customers to

5 | purchase its products.

6 | 54.   As a direct and proximate result of Old Navy's acts and omissions, all

7 | consumers who have purchased a product from Old Navy that was advertised with a false

8 | reference price and/or false discount have been harmed, have suffered an injury-in-fact, and

9 | have lost money or property.

10 | 55.   Old Navy's false advertising scheme has harmed all of its customers by

11 | fraudulently increasing demand for its products, thereby shifting the demand curve and

12 | enabling Old Navy to charge its customers more than it otherwise could have charged and to

13 | generate more sales than it otherwise would have generated.

14 | 56.   Customers did not enjoy the actual discounts Old Navy represented to them, and

15 | the products were not in fact worth the inflated amount that Old Navy represented to them (i.e.,

16 | the products were not actually worth the fictitious and invented list price).

17 | 57.   The false or misleading nature of Old Navy's reference prices and purported

18 | discounts were at all relevant times masked or concealed or hidden such that an ordinary

19 | consumer exercising reasonable care under all the circumstances would not have known of or

20 | discovered their false or misleading nature.

21 | 58.   Old Navy continues to advertise false reference prices and false percentage-off

22 | and dollar discounts to this day. There is no reason to believe that Old Navy will voluntarily

23 | and permanently cease its unlawful practices. Moreover, in the unlikely event that Old Navy

24 | were to cease its unlawful practices, Old Navy can and/or is likely to recommence these

25 | unlawful practices.

26 | 59.   In acting toward consumers and the general public in the manner alleged herein,

27 | Old Navy acted with and was guilty of malice, fraud, and/or oppression and/or acted in a

28 | manner with a strong and negative impact upon Plaintiffs, the Class and the public.

CLASS ACTION COMPLAINT                                   - 17 -

HATTIS & LUKACS
1401 Twenty-First Street, Suite 400
Sacramento, CA 95811
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

## VII.   PLAINTIFFS' FACTUAL ALLEGATIONS

**Plaintiff Anastasha Barba**

60.     Plaintiff Anastasha Barba is, and at all relevant times has been, a California resident.

61.     Ms. Barba has been a regular shopper at Old Navy for many years. Ms. Barba has made many purchases on Old Navy's website. For example, on March 5, 2019, Ms. Barba visited the Old Navy website (http://oldnavy.gap.com) to shop for clothing items. That day, Ms. Barba viewed and ultimately purchased several items from the Old Navy website.

62.     **Jeans.** For example, while browsing the Old Navy website, Ms. Barba viewed webpages advertising the Mid-Rise Super Skinny Jeans for Women ("Jeans"), Item #715218002. Below is partial screenshot of a webpage viewed by Ms. Barba on March 5, 2019; the particular Jeans she purchased are identified in an added red box:



63.     On this Jeans webpage, Ms. Barba viewed several representations, including a reference price and a sale price for the Jeans. Ms. Barba viewed a black strike-through reference price of "$29.99". Directly below the reference price, Ms. Barba viewed the sale

HATTIS & LUKACS
1401 Twenty-First Street, Suite 400
Sacramento, CA 95811
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1    price in red text "$15.00." Directly below the sale price, Ms. Barba viewed the phrase "Best

2    Seller."

3         64.    Ms. Barba clicked on the Jeans product listing on the webpage, and then viewed

4    a product webpage for the Jeans, which contained the same strike-through, sale price, and "Best

5    Seller" representations.

6         65.    Relying on Old Navy's representations, Ms. Barba reasonably believed that

7    these purportedly best-selling Jeans were normally offered and sold by Old Navy for the $29.99

8    list price. Ms. Barba reasonably believed that the Jeans were thereby worth and had a value of

9    $29.99. Ms. Barba reasonably believed that the advertised sale price of $15.00 represented a

10   special bargain, where Old Navy was temporarily offering the Jeans at 50% off the regular and

11   normal selling price of $29.99. Relying on Old Navy's representations, Ms. Barba selected the

12   size of the Jeans and then added the Jeans to her online shopping cart.

13        66.    However, Old Navy's representations and advertised discounts were false and

14   deceptive. In reality, and unbeknownst to Ms. Barba, Old Navy had offered these Jeans at the

15   purported regular price of $29.99 for only 12 out of the past 486 days prior to her purchase on

16   March 5, 2019. I.e., from November 4, 2017 through March 4, 2019, Old Navy had previously

17   offered the Jeans at the purported "regular" price only 2.47% of the time. And after Ms.

18   Barba's purchase on March 5, 2019, through to the present day, Old Navy *never* offered the

19   Jeans at the $29.99 purported regular price. In fact, on June 5, 2019, Old Navy raised the

20   purported regular price of the product to $34.99, despite this new reference price having no

21   foundation whatsoever—consistent with Old Navy's policy of inventing reference prices out of

22   thin air.

23        67.    Old Navy had fooled Ms. Barba. The Jeans were not in fact worth the $29.99

24   price that Old Navy had led her to believe. Contrary to Old Navy's representations, Ms. Barba

25   did not receive any deal at all. The $15.00 price she paid was in fact simply Old Navy's usual

26   and normal selling price for the Jeans.

27        68.    **Toddler Tee.** In the same web browsing session, Ms. Barba also viewed

28   webpages advertising the Printed Crew-Neck Tee for Toddler ("Toddler Tee"), Item

CLASS ACTION COMPLAINT

- 19 -

1   #392277142. Below is partial screenshot of a webpage of the Toddler Tee viewed by Ms.

2   Barba on March 5, 2019:



Printed Crew-Neck Tee for Toddler Girls
$9.99
$5.00
Hot Deal

17   69.     On this Toddler Tee webpage, Ms. Barba viewed several representations,

18   including a reference price and a sale price for the Toddler Tee. Ms. Barba viewed a black

19   strike-through reference price of "$9.99." Directly below the reference price, Ms. Barba viewed

20   the sale price in red text "$5.00". Directly below the sale price, Ms. Barba viewed the phrase

21   "Hot Deal".

22   70.     Ms. Barba clicked on the Toddler Tee product listing on the webpage, and then

23   viewed a product webpage for the Toddler Tee, which contained the same strike-through, sale

24   price, and "Hot Deal" representations.

25   71.     Relying on Old Navy's representations, Ms. Barba reasonably believed that the

26   $5.00 sale price for the Toddler Tee represented a special "Hot Deal," and that the Toddler Tee

27   was normally offered and sold by Old Navy for the $9.99 list price. Ms. Barba reasonably

28   believed that the Toddler Tee was thereby worth and had a value of $9.99. Ms. Barba

HATTIS & LUKACS
1401 Twenty-First Street, Suite 400
Sacramento, CA 95811
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1    reasonably believed that the advertised sale price of $5.00 represented a special bargain (a "Hot

2    Deal"), where Old Navy was temporarily offering the Toddler Tee at 50% off the regular and

3    normal selling price of $9.99. Relying on Old Navy's representations, Ms. Barba selected the

4    size of the Toddler Tee and then added it to her online shopping cart.

5        72.     However, Old Navy's representations and advertised discounts were false and

6    deceptive. In reality, and unbeknownst to Ms. Barba, Old Navy had *never* offered the Toddler

7    Tee at the purported regular price of $9.99 in the prior 60 days. And after Ms. Barba's purchase

8    on March 5, 2019, through to the present day, Old Navy continued to *never* offer the Toddler

9    Tee at the $9.99 reference price.

10        73.     Old Navy had fooled Ms. Barba. The Toddler Tee was not in fact worth the

11    $9.99 price that Old Navy had led her to believe. Contrary to Old Navy's representations, Ms.

12    Barba did not receive any deal at all, let alone a "Hot Deal." The $5.00 price she paid was in

13    fact simply Old Navy's usual and normal selling price for the Toddler Tee.

14        74.     After Ms. Barba added these items to her online shopping cart she went through

15    Old Navy's online checkout process, where Old Navy made additional false discount

16    representations. For example, Old Navy represented that she was enjoying a "My Savings"

17    dollar amount which was calculated by totaling the false discounts from the inflated reference

18    prices for the items in her cart. Relying on Old Navy's misrepresentations, Ms. Barba

19    purchased the products.

20        75.     Old Navy's advertised false reference prices and false discounts were material

21    misrepresentations and inducements to Ms. Barba's purchases.

22        76.     Ms. Barba reasonably relied on Old Navy's material misrepresentations. If Ms.

23    Barba had known the truth, she would have acted differently and/or would not have purchased

24    the Jeans and the Toddler Tee from Old Navy.

25        77.     These misrepresentations by Old Navy are material misrepresentations, in that

26    they are the type of representations on which an ordinary prudent person would rely upon in

27    conducting his or her affairs.

28        78.     As a direct and proximate result of Old Navy's acts and omissions, Ms. Barba

CLASS ACTION COMPLAINT        - 21 -        HATTIS & LUKACS
1401 Twenty-First Street, Suite 400
Sacramento, CA 95811
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1  was harmed, suffered an injury-in-fact, and lost money or property.

2      79.    Old Navy's false advertising harmed Ms. Barba by causing her to pay more than

3  she otherwise would have paid and to buy more than she otherwise would have bought. Ms.

4  Barba did not enjoy the stated discounts from the purported regular price that Old Navy

5  represented to her, and the products were not, in fact, worth as much as Old Navy represented

6  them to be worth (i.e., the products were not worth the inflated and fictitious reference price).

7      80.    Ms. Barba has a legal right to rely now, and in the future, on the truthfulness and

8  accuracy of Old Navy's representations regarding its advertised reference prices and discounts.

9      81.    Ms. Barba was a regular shopper on Old Navy's website, and would likely shop

10  there again if she could have confidence regarding the truth of Old Navy's prices and the value

11  of its products.

12      82.    Ms. Barba will be harmed if, in the future, she is left to guess as to whether Old

13  Navy is providing a legitimate sale or not, and whether products are actually worth the amount

14  that Old Navy is representing.

15      83.    If Ms. Barba were to purchase again from Old Navy without Old Navy having

16  changed its unlawful and deceptive conduct alleged herein, Ms. Barba would be harmed on an

17  ongoing basis and/or would be harmed once or more in the future

18  **Plaintiff Brenda Tripicchio**

19      84.    Plaintiff Brenda Tripicchio is, and at all relevant times has been, a New Jersey

20  resident.

21      85.    Ms. Tripicchio has been a regular shopper at Old Navy for many years. She has

22  made many purchases in Old Navy's brick-and-mortar stores, including in Old Navy mainline

23  stores and in Old Navy Outlet stores.

24      86.    For example, on March 24, 2019, Ms. Tripicchio visited the Old Navy Outlet

25  store located at 100 Premium Outlets Drive, Blackwood, New Jersey. While at the store, Ms.

26  Tripicchio saw prominent signs that advertised significant sales and percentage-off discounts

27  throughout the store. Ms. Tripicchio purchased several items that day.

28      87.    **Dress.** For example, Ms. Tripicchio saw and purchased a Jersey Swing Dress for

CLASS ACTION COMPLAINT

- 22 -

HATTIS & LUKACS
1401 Twenty-First Street, Suite 400
Sacramento, CA 95811
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1  Women ("Dress"), Item #390760051. Ms. Tripicchio viewed signage adjacent to the Dress
2  advertising that the Dress was on sale for $20.00. Ms. Barba viewed the price tag attached to
3  the Dress, which showed a price of $29.99.

4        88.    Relying on Old Navy's representations, Ms. Tripicchio reasonably believed that
5  the Dress was normally offered and sold by Old Navy for the $29.99 list price. Ms. Tripicchio
6  reasonably believed that the Dress was thereby worth and had a value of $29.99. Ms. Tripicchio
7  reasonably believed that the advertised sale price of $20.00 represented a special bargain,
8  where Old Navy was temporarily offering the Dress for $9.99 off (i.e., 33% off) of the regular
9  and normal selling price of $29.99. Relying on Old Navy's representations, Ms. Tripicchio
10  purchased the Dress.

11        89.    However, Old Navy's $29.99 reference price and advertised discounts of $9.99
12  off and 33% off were false and deceptive. In reality, and unbeknownst to Ms. Tripicchio, Old
13  Navy had rarely if ever offered the Dress for $29.99.

14        90.    Old Navy had fooled Ms. Tripicchio. The Dress was not in fact worth the $29.99
15  price that Old Navy had led her to believe. Contrary to Old Navy's representations, Ms.
16  Tripicchio did not receive any deal at all. The $20.00 price she paid for the Dress was in fact
17  approximately equal to Old Navy's usual and normal selling price for the Dress.

18        91.    **Hoodie.** Also while at the Old Navy Outlet on March 24, 2019, Ms. Tripicchio
19  saw and purchased a Zip-Front Hoodie for Boys ("Hoodie"), Item #287720301. Ms. Tripicchio
20  viewed signage adjacent to the Hoodie advertising that the Hoodie was "20% Off." Ms.
21  Tripicchio viewed the price tag attached to the Hoodie, which showed a price of $19.99.

22        92.    Relying on Old Navy's representations, Ms. Tripicchio reasonably believed that
23  the Hoodie was normally offered and sold by Old Navy for the $19.99 list price. Ms. Tripicchio
24  reasonably believed that the Hoodie was thereby worth and had a value of $19.99. Ms.
25  Tripicchio reasonably believed that the advertised savings of 20% off represented a special
26  bargain, where Old Navy was temporarily offering the Hoodie for $4 off of the regular and
27  normal selling price of $19.99. Relying on Old Navy's representations, Ms. Tripicchio
28  purchased the Hoodie.

CLASS ACTION COMPLAINT

- 23 -

93.     However, Old Navy's $19.99 reference price and advertised discounts of 20%
off and $4.00 off were false and deceptive. In reality, and unbeknownst to Ms. Tripicchio, Old
Navy had rarely if ever offered the Hoodie for $19.99.

94.     Old Navy had fooled Ms. Tripicchio. The Hoodie was not in fact worth the
$19.99 price that Old Navy had led her to believe. Contrary to Old Navy's representations, Ms.
Tripicchio did not receive any deal at all. In fact, the $15.99 price Ms. Tripicchio paid for the
supposedly discounted Hoodie was *higher* than the true regular selling price for the Hoodie.

95.     On the paper receipt Ms. Tripicchio received at the cash register and which Ms.
Tripicchio viewed, Old Navy made additional product pricing and value representations
regarding the Dress and the Hoodie. Old Navy printed on the receipt that the price for the Dress
was "1 @ 29.99", and directly below that Old Navy printed "Item Discount. -9.99". Old Navy
printed on the receipt that the price for the Hoodie was "1 @ 19.99", and directly below that
Old Navy printed "Item Discount 20% -4.00". At the bottom of the receipt, Old Navy printed
in large text (which was nearly twice the font size of the text on the rest of the receipt) the
phrase "You Saved XXX.XX", where XXX.XX was the total dollar amount of all the
purported "Item Discount[s]" for the products she purchased that day, including the $9.99
discount she purportedly received on the Dress and the $4.00 discount she purportedly received
on the Hoodie. These representations on the receipt further indicated to Ms. Tripicchio that the
Dress had a value of, and was normally and usually offered for, $29.99, and that the lower
$20.00 price she paid was a bargain price after Old Navy applied a special $9.99 discount.
These representations on the receipt likewise indicated to Ms. Tripicchio that the Hoodie had a
value of, and was normally and usually offered for, $19.99, and that the lower $15.99 price she
paid was a bargain price after Old Navy applied a special $4.00 (20% off) discount.

96.     Old Navy's advertised false reference prices and advertised false discounts were
material misrepresentations and inducements to Ms. Tripicchio's purchases.

97.     Ms. Tripicchio reasonably relied on Old Navy's material misrepresentations. If
Ms. Tripicchio had known the truth, she would have acted differently and/or would not have
purchased the products from Old Navy.

CLASS ACTION COMPLAINT

- 24 -

98.     These misrepresentations by Old Navy are material misrepresentations, in that they are the type of representations on which an ordinary prudent person would rely upon in conducting his or her affairs.

99.     As a direct and proximate result of Old Navy's acts and omissions, Ms. Tripicchio was harmed, suffered an injury-in-fact, and lost money or property.

100.    Old Navy's false advertising harmed Ms. Tripicchio by causing her to pay more than she otherwise would have paid and to buy more than she otherwise would have bought. Ms. Tripicchio did not enjoy the stated discounts from the purported "regular" price that Old Navy represented to her (i.e., the reference price), and the products were not, in fact, worth as much as Old Navy represented them to be worth (i.e., the products were not worth the inflated and fictitious reference price).

101.    Ms. Tripicchio has a legal right to rely now, and in the future, on the truthfulness and accuracy of Old Navy's representations regarding its advertised reference prices and discounts.

102.    Ms. Trippichio was a regular shopper at Old Navy, and would likely shop there again if she could have confidence regarding the truth of Old Navy's prices and the value of its products.

103.    Ms. Trippichio will be harmed if, in the future, she is left to guess as to whether Old Navy is providing a legitimate sale or not, and whether products are actually worth the amount that Old Navy is representing.

104.    If Ms. Trippichio were to purchase again from Old Navy without Old Navy having changed its unlawful and deceptive conduct alleged herein, Ms. Trippichio would be harmed on an ongoing basis and/or would be harmed once or more in the future.

105.    The deceptive practices and policies alleged herein, and experienced directly by Plaintiffs Barba and Tripicchio, are not limited to any single product or group of products. Rather, Old Navy's deceptive advertising, sales practices, and printed sales receipts, which advertise and state false "regular" prices and false percentage-off and dollar discounts, were, and continue to be, systematic and pervasive across nearly all of Old Navy's products across all

CLASS ACTION COMPLAINT

- 25 -

1  of Old Navy's sales channels.

2

## VIII.  CLASS ACTION ALLEGATIONS

3

106.   Plaintiffs bring this class-action lawsuit on behalf of themselves and the

4

members of the following class (the "Nationwide Online Class"):

5

> **All persons in the United States of America who, within the**
> **applicable limitations period, purchased from the Old Navy**
> **website one or more products which was advertised or promoted**
> **by displaying or disseminating a reference price or discount.**

6

7

8

107.   Plaintiff Brenda Tripicchio also brings this class-action lawsuit on behalf of

9

herself and the members of the following class (the "New Jersey In-Store Class"):

10

> **All persons in the State of New Jersey who, within the applicable**
> **limitations period, purchased from an Old Navy or Old Navy**
> **Outlet brick-and-mortar store one or more products which was**
> **advertised or promoted by displaying or disseminating a reference**
> **price or discount.**

11

12

13

108.   The Nationwide Online Class and the New Jersey In-Store Class are collectively

14

referred to herein as the "Class."

15

109.   Specifically excluded from the Class are the Defendants, any entity in which a

16

Defendant has a controlling interest or which has a controlling interest in a Defendant, each

17

Defendant's agents and employees and attorneys, the bench officers to whom this civil action is

18

assigned, and the members of each bench officer's staff and immediate family.

19

110.   *Numerosity.* Plaintiffs do not know the exact number of Class members but are

20

informed and believe that the Class easily comprises hundreds of thousands of individuals. As

21

such, Class members are so numerous that joinder of all members is impracticable.

22

111.   *Commonality and Predominance.* Well-defined, nearly identical legal or factual

23

questions affect the members of the Class. These questions predominate over questions that

24

might affect individual Class members. These common questions include, but are not limited

25

to, the following:

26

a.   Old Navy's policies and actions regarding its advertising;

27

b.   The accuracy of Old Navy's advertised reference prices and discounts;

28

c.   Whether the alleged conduct of Old Navy violates California Civil Code

---

CLASS ACTION COMPLAINT

- 26 -

1   § 1750 *et seq.*, California Business & Professions Code § 17500 *et seq.*, and/or California

2   Business & Professions Code § 17200 *et seq.*;

3           d.     Whether the alleged conduct of Old Navy violates N.J.A.C. § 13:45A-

4   9.3(a)(3), N.J.A.C. § 13:45A-9.6, N.J.S.A. § 56:8-1, and/or N.J.S.A. § 56:12-16, *et seq.*;

5           e.     Whether Plaintiffs and the Class have suffered injury and have lost

6   money or property as a result of such false or misleading discounts and reference prices;

7           f.     Whether Defendants should be ordered to disgorge their unjust

8   enrichment; and

9           g.     Whether Old Navy should be enjoined from further engaging in the

10   misconduct alleged herein.

11      112.   The prosecution of separate actions by individual members of the Class would

12   create a risk of inconsistent or varying adjudications with respect to individual members of the

13   Class which would establish incompatible standards of conduct for the party opposing the

14   Class.

15      113.   The party opposing the Class has acted or refused to act on grounds generally

16   applicable to the Class, thereby making appropriate final injunctive relief with respect to the

17   Class as a whole.

18      114.   ***Typicality.*** Plaintiffs' claims are typical of Class members' claims. Plaintiffs and

19   Class members all sustained injury as a result of Defendants' practices and schemes.

20      115.   ***Adequacy.*** Plaintiffs will fairly and adequately protect Class members' interests.

21   Plaintiffs have no interests antagonistic to Class members' interests. Plaintiffs have retained

22   counsel who have considerable experience and success in prosecuting complex class action and

23   consumer protection cases.

24      116.   Further, a class action is superior to all other available methods for fairly and

25   efficiently adjudicating this controversy. Each Class member's interests are small compared to

26   the burden and expense required to litigate each of their claims individually, so it would be

27   impractical and would not make economic sense for Class members to seek individual redress

28   for Old Navy's conduct. Individual litigation would add administrative burden on the courts,

CLASS ACTION COMPLAINT

- 27 -

HATTIS & LUKACS
1401 Twenty-First Street, Suite 400
Sacramento, CA 95811
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1   increasing the delay and expense to all parties and to the court system. Individual litigation

2   would also create the potential for inconsistent or contradictory judgments regarding the same

3   uniform conduct. A single adjudication would create economies of scale and comprehensive

4   supervision by a single judge. Moreover, Plaintiffs do not anticipate any difficulties in

5   managing a class action trial.

6        117.   By its conduct and omissions alleged herein, Old Navy has acted and refused to

7   act on grounds that apply generally to Class, such that final injunctive relief and/or declaratory

8   relief is appropriate respecting the Class as a whole.

9        118.   The nature of Old Navy's misconduct is non-obvious and/or obscured from

10   public view, and neither Plaintiffs nor the members of the Class could have, through the use of

11   reasonable diligence, learned of the accrual of their claims against Old Navy at an earlier time.

12   This Court should, at the appropriate time, apply the discovery rule to extend any applicable

13   limitations period (and the corresponding class period) to the date on which Old Navy first

14   began perpetrating the false reference price and false discount advertising scheme alleged

15   herein.

### CAUSES OF ACTION

### COUNT I
**Violation of the Consumers Legal Remedies Act
California Civil Code § 1750 *et seq.***

19        119.   Plaintiffs reallege and incorporate by reference all paragraphs alleged

    hereinbefore.

20        120.   Plaintiffs each bring this claim in their individual capacity, in their capacity as a

21   private attorney general seeking the imposition of public injunctive relief, and/or as a

22   representative of a putative class.

23        121.   Each of Defendants Old Navy, LLC, Old Navy (Apparel), LLC, Old Navy

24   Holdings, LLC, GPS Services, Inc., The Gap, Inc., and each Doe defendant is a "person," as

25   defined by California Civil Code § 1761(c).

26        122.   Plaintiffs Anastasha Barba and Brenda Tripicchio are each a "consumer," as

27   defined by California Civil Code § 1761(d).

28

---

CLASS ACTION COMPLAINT

- 28 -

123.    The clothing items purchased by Plaintiffs from Old Navy are "goods" as defined by California Civil Code § 1761(a).

124.    Plaintiffs' purchases from Old Navy constitutes a "transaction," as defined by California Civil Code § 1761(e).

125.    The unlawful methods, acts or practices alleged herein to have been undertaken by Old Navy were all committed intentionally. The unlawful methods, acts or practices alleged herein to have been undertaken by Old Navy did not result from a bona fide error notwithstanding the use of reasonable procedures adopted to avoid such error.

126.    With regard to this count of the pleading which alleges one or more violations of the CLRA, venue is proper in the San Francisco Superior Court because, without limitation, the County of San Francisco is the county in which Defendant Old Navy, Inc., has its principal place of business. A declaration establishing that this Court has proper venue for this count is attached hereto as **Exhibit A.**

127.    Old Navy's methods, acts and/or practices, including Old Navy's misrepresentations, active concealment, and/or failures to disclose, violated and continue to violate the CLRA in ways including, but not limited to, the following:

1.    Old Navy misrepresented that its products had characteristics, benefits, or uses that they did not have (Cal. Civ. Code § 1770(a)(5));

2.    Old Navy advertised its products with an intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9));

3.    Old Navy made false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions. (Cal. Civ. Code § 1770(a)(13)); and

4.    Old Navy represented that its products were supplied in accordance with previous representations when they were not (Cal. Civ. Code § 1770(a)(16)).

128.    With respect to omissions, Old Navy at all relevant times had a duty to disclose the information in question because, *inter alia*: (a) Old Navy had exclusive knowledge of material information that was not known to Plaintiffs and the Class; (b) Old Navy concealed material information from Plaintiffs and the Class; and/or (c) Old Navy made partial

CLASS ACTION COMPLAINT

- 29 -

HATTIS & LUKACS
1401 Twenty-First Street, Suite 400
Sacramento, CA 95811
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1  representations which were false and misleading absent the omitted information.

2      129.    Old Navy's misrepresentations and nondisclosures deceive and have a tendency
3  to deceive the general public.

4      130.    Old Navy's misrepresentations and nondisclosures are material, in that a
5  reasonable person would attach importance to the information and would be induced to act on
6  the information in making purchase decisions.

7      131.    As a direct and proximate result of these violations, Plaintiffs and the Class
8  suffered injury-in-fact and lost money.

9      132.    Plaintiffs and the Class paid more than they otherwise would have paid for the
10  products they purchased from Old Navy and they bought more than they otherwise would have
11  bought from Old Navy.

12      133.    Plaintiffs and the Class did not enjoy the actual discounts Old Navy represented
13  to them, and the products were not in fact worth the inflated amount that Old Navy represented
14  to them (i.e., the products were not actually worth the fictitious and invented list price).

15      134.    Old Navy's false advertising scheme has harmed all of its customers by
16  fraudulently increasing demand for its products, thereby shifting the demand curve and
17  enabling Old Navy to charge its customers more than it otherwise could have charged and to
18  generate more sales than it otherwise would have generated.

19      135.    Old Navy's conduct alleged herein caused substantial injury to Plaintiffs, the
20  Class, and the public. Old Navy's conduct is ongoing and is likely to continue and recur absent
21  a permanent injunction. Accordingly, Plaintiffs seek an order enjoining Old Navy from
22  committing such practices. Plaintiffs also seek attorneys' fees and costs.

23      136.    Plaintiffs individually seek public injunctive relief, under the CLRA, to protect
24  the general public from Old Navy's false advertisements and omissions.

25      137.    In accordance with California Civil Code § 1782(a), on July 18, 2019, Plaintiffs'
26  counsel served Old Navy with notice of its CLRA violations by certified mail, return receipt
27  requested. A true and correct copy of that notice is attached hereto as **Exhibit B**. If Old Navy
28  fails to provide appropriate relief for its CLRA violations within 30 days of Plaintiffs'

CLASS ACTION COMPLAINT

- 30 -

HATTIS & LUKACS
1401 Twenty-First Street, Suite 400
Sacramento, CA 95811
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1  notification letter, Plaintiffs will amend this complaint to seek compensatory and exemplary

2  damages as permitted by Cal. Civ. Code §§ 1780 and 1782(b).

3                                    **COUNT II**
                          **Violation of California's False Advertising Law**
4              **California Business and Professions Code § 17500 *et seq*.**

5       138.    Plaintiffs reallege and incorporate by reference all paragraphs alleged

6  hereinbefore.

7       139.    Plaintiffs each bring this claim in their individual capacity, in their capacity as a

8  private attorney general seeking the imposition of public injunctive relief, and/or as a

9  representative of a putative class.

10      140.    Old Navy has engaged in false or misleading advertising in violation of

11  California's statutory False Advertising Law ("FAL").

12      141.    Old Navy has advertised reference prices and corresponding discounts that are

13  false, misleading, and/or have a capacity, likelihood or tendency to deceive reasonable

14  consumers. *See, e.g., Kasky*, 27 Cal.4th at 951 (UCL and FAL prohibit "not only advertising

15  which is false, but also advertising which, although true, is either actually misleading or which

16  has a capacity, likelihood or tendency to deceive or confuse the public" (citation omitted));

17  *Hansen v. Newegg.com Americas, Inc.*, 25 Cal.App. 5th 714, 722 (2018) (same);

18  *Overstock.com, Inc.*, 2014 WL 657516, at *23 (same).

19      142.    Old Navy, with intent directly or indirectly to dispose of personal property or to

20  perform services, or to induce the public to enter into any obligation relating thereto, makes,

21  disseminates, has made or disseminated, causes to be made or disseminated, and/or has caused

22  to be made or disseminated, before the public in the State of California and throughout the

23  United States, in any newspaper or other publication, or any advertising device, or by public

24  outcry or by proclamation, or in any other manner or means, including over the Internet,

25  statements concerning that personal property or those services, and/or concerning any

26  circumstance or matter of fact connected with the proposed performance or disposition thereof,

27  which are untrue or misleading and which are known (or which by the exercise of reasonable

28  care should be known) to be untrue or misleading.

CLASS ACTION COMPLAINT

- 31 -

143.    Independently, Old Navy has made or disseminated or caused to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised.

144.    With respect to omissions, Old Navy at all relevant times had a duty to disclose the information in question because, *inter alia*: (a) Old Navy had exclusive knowledge of material information that was not known to Plaintiffs and the Class; (b) Old Navy concealed material information from Plaintiffs and the Class; and/or (c) Old Navy made partial representations which were false and misleading absent the omitted information.

145.    Old Navy committed such violations of the False Advertising Law with actual knowledge that its advertising was untrue or misleading, or Old Navy, in the exercise of reasonable care, should have known that its advertising was untrue or misleading.

146.    Plaintiffs and the Class reasonably relied on Old Navy's representations and/or omissions made in violation of the False Advertising Law.

147.    As a direct and proximate result of these violations, Plaintiffs and the Class suffered injury-in-fact and lost money.

148.    Plaintiffs and the Class paid more than they otherwise would have paid for the products they purchased from Old Navy and they bought more than they otherwise would have bought from Old Navy.

149.    Plaintiffs and the Class did not enjoy the actual discounts Old Navy represented to them, and the products were not in fact worth the inflated amount that Old Navy represented to them (i.e., the products were not actually worth the fictitious and invented list price).

150.    Old Navy's false advertising scheme has harmed all of its customers by fraudulently increasing demand for its products, thereby shifting the demand curve and enabling Old Navy to charge its customers more than it otherwise could have charged and to generate more sales than it otherwise would have generated.

151.    Old Navy should be ordered to disgorge or make restitution of all monies improperly accepted, received or retained.

CLASS ACTION COMPLAINT

- 32 -

HATTIS & LUKACS
1401 Twenty-First Street, Suite 400
Sacramento, CA 95811
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1    152.    Old Navy's conduct has caused substantial injury to Plaintiffs, the Class, and the

2    public. Old Navy's conduct is ongoing and is likely to continue and recur absent a permanent

3    injunction. Accordingly, Plaintiffs seek an order enjoining Old Navy from committing such

4    violations of the FAL. Plaintiffs further seek an order granting restitution to Plaintiffs and the

5    Class in an amount to be proven at trial. Plaintiffs further seek an award of attorneys' fees and

6    costs under Cal. Code Civ. Proc. § 1021.5.

7    153.    Absent injunctive relief, Old Navy will continue to injure Plaintiffs and the

8    Class. Old Navy's misrepresentations and omissions are ongoing. Even if such conduct were to

9    cease, it is behavior that is capable of repetition or reoccurrence by Old Navy.

10    154.    Plaintiffs each individually seek public injunctive relief, under the FAL, to

11    protect the general public from Old Navy's false reference price advertising and omissions.

**COUNT III**
**Violation of California's Unfair Competition Law**
**California Business and Professions Code § 17200 et seq.**

14    155.    Plaintiffs reallege and incorporate by reference all paragraphs alleged

15    hereinbefore.

16    156.    Plaintiffs each bring this claim in their individual capacity, in their capacity as a

17    private attorney general seeking the imposition of public injunctive relief, and/or as a

18    representative of a putative class.

19    157.    Defendant Old Navy's acts and omissions alleged herein constitute unfair

20    competition and/or unlawful, unfair, or fraudulent business practices in violation of California

21    Business and Professions Code § 17200 et seq. (the "Unfair Competition Law" or "UCL").

22    158.    Old Navy's conduct and omissions alleged herein are immoral, unethical,

23    oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiffs and the

24    Class. There is no utility to Old Navy's conduct, and even if there were any utility, it would be

25    significantly outweighed by the gravity of the harm to consumers caused by Old Navy's

26    conduct alleged herein.

27    159.    Old Navy's conduct and omissions alleged herein also violate California public

28    policy, including as such policy is reflected in Cal. Civ. Code § 1750 et seq. and Cal. Civ. Code

CLASS ACTION COMPLAINT

- 33 -

HATTIS & LUKACS
1401 Twenty-First Street, Suite 400
Sacramento, CA 95811
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1 §§ 1709-1710.

2     160.   By its conduct and omissions alleged herein, Old Navy has violated the

3 "unlawful" prong of the UCL, including by making material misrepresentations and omissions

4 in violation of Cal. Bus. & Prof. Code § 17500 *et seq.* and Cal. Civ. Code § 1750, *et seq.*;

5 engaging in deceit in violation of Cal Civ. Code §§ 1709-1710; and employing deceptive

6 reference price advertisements as identified by 16 C.F.R § 233.1 *et seq.*

7     161.   Old Navy has violated the "fraudulent" prong of the UCL by advertising its

8 products with a false and inflated reference price and with a false discount.

9     162.   With respect to omissions, Old Navy at all relevant times had a duty to disclose

10 the information in question because, *inter alia*: (a) Old Navy had exclusive knowledge of

11 material information that was not known to Plaintiffs and the Class; (b) Old Navy concealed

12 material information from Plaintiffs and the Class; and/or (c) Old Navy made partial

13 representations which were false and misleading absent the omitted information.

14     163.   Old Navy's material misrepresentations and nondisclosures were likely to

15 mislead reasonable consumers, existing and potential customers, and the public.

16     164.   Old Navy's misrepresentations and nondisclosures deceive and have a tendency

17 to deceive the general public and reasonable consumers.

18     165.   Old Navy's misrepresentations and nondisclosures are material, such that a

19 reasonable person would attach importance to the information and would be induced to act on

20 the information in making purchase decisions.

21     166.   Plaintiffs and the Class reasonably relied on Old Navy's material

22 misrepresentations and nondisclosures, and would have acted differently if they had known the

23 truth.

24     167.   By its conduct and omissions alleged herein, Old Navy received more money

25 from Plaintiffs and the Class than it should have received, and that money is subject to

26 restitution.

27     168.   As a direct and proximate result of Old Navy's unfair, unlawful, and fraudulent

28 conduct, Plaintiffs and the Class lost money.

CLASS ACTION COMPLAINT

- 34 -

169.    Plaintiffs and the Class paid more than they otherwise would have paid for the products they purchased from Old Navy and they bought more than they otherwise would have bought from Old Navy.

170.    Plaintiffs and the Class did not enjoy the actual discounts Old Navy represented to them, and the products were not in fact worth the inflated amount that Old Navy represented to them (i.e., the products were not actually worth the fictitious and invented list price).

171.    Old Navy's false advertising scheme has harmed all of its customers by fraudulently increasing demand for its products, thereby shifting the demand curve and enabling Old Navy to charge its customers more than it otherwise could have charged and to generate more sales than it otherwise would have generated.

172.    Old Navy's conduct has caused substantial injury to Plaintiffs, Class members, and the public. Old Navy's conduct is ongoing and is likely to continue and recur absent a permanent injunction. Accordingly, Plaintiffs seek an order enjoining Old Navy from committing such unlawful, unfair, and fraudulent business practices. Plaintiffs further seek an order granting restitution to Plaintiffs and the Class in an amount to be proven at trial. Plaintiffs further seek an award of attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

173.    Absent injunctive relief, Old Navy will continue to injure Plaintiffs and the Class. Old Navy's misrepresentations and omissions are ongoing. Even if such conduct were to cease, it is behavior that is capable of repetition or reoccurrence by Old Navy.

174.    Plaintiffs each individually seek public injunctive relief, under the UCL, to protect the general public from Old Navy's false reference price advertising.

### COUNT IV
#### Permanent Public Injunctive Relief
#### All Statutory, Inherent and Other Authority
#### (Individually)

175.    Plaintiffs reallege and incorporate by reference all paragraphs alleged hereinbefore.

176.    Plaintiffs each bring this claim in their individual capacity.

177.    Public injunctive relief is a remedy which is authorized and recognized by the

1    laws of California. Public injunctive relief is defined as an injunction which seeks "not to

2    resolve a private dispute but to remedy a public wrong." *Broughton v. Cigna Healthplans of*

3    *California*, 21 Cal. 4th 1066, 1080 (1999). "Whatever the individual motive of the party

4    requesting injunctive relief, the benefits of granting injunctive relief by and large do not accrue

5    to that party, but to the general public in danger of being victimized by the same deceptive

6    practices as the plaintiff suffered.  . . . .  In other words, the plaintiff in a CLRA damages action

7    is playing the role of a bona fide private attorney general." *Ibid.*

8         178.    Three of Plaintiffs' claims are brought under California statutes which empower

9    the Court to craft wide-ranging injunctions to benefit consumers at large. "In previous

10   decisions, this court has said that the statutory remedies available for a violation of the

11   Consumers Legal Remedies Act (CLRA; Civ. Code, § 1750 *et seq.*), the unfair competition law

12   (UCL; Bus. & Prof. Code, § 17200 *et seq.*), and the false advertising law (id., § 17500 *et seq.*)

13   include public injunctive relief, i.e., injunctive relief that has the primary purpose and effect of

14   prohibiting unlawful acts that threaten future injury to the general public." *McGill v. Citibank,*

15   *N.A.*, 2 Cal. 5th 945, 951 (2017).

16        179.    If not enjoined by order of this Court, Old Navy is free to resume its unlawful

17   behavior and injure Plaintiffs and consumers through the misconduct alleged herein once more.

18   Old Navy has a duty to speak truthfully or in a non-misleading manner.

19        180.    Plaintiffs are regular shoppers at Old Navy, and would likely shop there again if

20   they could have confidence regarding the truth of Old Navy's prices and the value of its

21   products.

22        181.    Plaintiffs will be harmed if, in the future, they are left to guess as to whether Old

23   Navy is providing a legitimate sale or not, and whether products are actually worth the amount

24   that Old Navy is representing.

25        182.    If Plaintiffs were to purchase again from Old Navy without Old Navy having

26   changed its unlawful and deceptive conduct alleged herein, Plaintiffs would be harmed on an

27   ongoing basis and/or would be harmed once or more in the future

28        183.    The balance of the equities favors the entry of permanent injunctive relief

CLASS ACTION COMPLAINT
                                        - 36 -

1   against Old Navy. Plaintiffs and the general public will be irreparably harmed absent the entry

2   of permanent injunctive relief against Old Navy. Plaintiffs and the general public lack an

3   adequate remedy at law. A permanent injunction against Old Navy is in the public interest. Old

4   Navy's unlawful behavior is capable of repetition or re-occurrence absent the entry of a

5   permanent injunction.

**COUNT V**
**Violation of the New Jersey Consumer Fraud Act**
**N.J.S.A. § 56:8-1, *et seq.***
**(On Behalf of the New Jersey In-Store Class)**

9       184.    Plaintiff Brenda Tripicchio realleges and incorporates Paragraphs 1 – 118.

10      185.    This count is pleaded in the alternative by Plaintiff Brenda Tripicchio on behalf

11  of herself and the New Jersey In-Store Class.

12      186.    The New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, et seq. (the "NJCFA")

13  applies to all sales made by Defendants to New Jersey consumers from Defendants' Old Navy

14  and Old Navy Outlet retail brick-and-mortar stores.

15      187.    The NJCFA was enacted to protect consumers against sharp and unconscionable

16  commercial practices by persons engaged in the sale of goods or services. *See Marascio v.*

17  *Campanella,* 689 A.2d 852, 857 (App. Div. 1997).

18      188.    The NJCFA is a remedial statute which the New Jersey Supreme Court has

19  repeatedly held must be construed liberally in favor of the consumer to accomplish its deterrent

20  and protective purposes. *See Furst v. Einstein Moomjy, Inc.,* 860 A.2d 435, 441 (N.J. 2004).

21      189.    Defendants violated the NJCFA by engaging in the act, use or employment of an

22  unconscionable commercial practice, deception, fraud, false pretense, misrepresentation, or the

23  knowing concealment, suppression, or omission of any material fact with intent that others rely

24  upon such concealment, suppression or omission whether or not any person has in fact been

25  misled, deceived or damaged thereby.

26      190.    Moreover, because Defendants' conduct described herein is a violation of both

27  federal regulations and New Jersey state regulations, such conduct constitutes a *per se* violation

28  of the NJCFA. Defendants' conduct concerning false former prices and false discounts violated

HATTIS & LUKACS
1401 Twenty-First Street, Suite 400
Sacramento, CA 95811
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

16 C.F.R. § 233.1 *et seq.* Defendants' conduct also violated both N.J.A.C. § 13:45A-9.3(a)(3) and § 13:45A-9.4(a)(5) and (6), which require, *inter alia,* that a seller advertising a purported percentage-off discount and/or price comparison must affirmatively state in writing the basis for the purported discount and the source of the price which is being used for comparison, including whether that price was previously charged by the seller or its competitors and when and where that former price was previously charged. Defendants' reference price and discount advertising clearly does not do any of this.

191.    Plaintiff Tripicchio and the New Jersey In-Store Class reasonably and justifiably expected Defendants to comply with applicable law, but Defendants failed to do so.

192.    As a direct and proximate result of these unlawful actions by Defendants, Plaintiff Tripicchio and the New Jersey In-Store Class have been injured and have suffered an ascertainable loss of money.

193.    Under New Jersey law, the value of an item is presumed to be the price listed on its price tag as the regular, typical price at which it was sold or offered for sale in the recent past.

194.    By stating that the reference price of each product (i.e., the Dress and the Hoodie) purchased by Plaintiff Tripicchio was higher than the price at which the item was typically sold or offered for sale, Defendants promised a bargain to Ms. Tripicchio in which she would receive an item worth the reference price claimed on Defendants' tag and in which she would realize monetary savings equal to the difference between the reference price and the purchase price.

195.    In actuality, however, the true value of each of the products purchased by Ms. Tripicchio was less than the false and inflated reference price listed on its price tag, and Ms. Tripicchio did not save the amount of money claimed by Defendants.

196.    Moreover, Plaintiff Tripicchio suffered an out-of-pocket loss of money in that she was induced to pay Defendants money based on the misleading and deceptive statements of Defendants. But for those misleading and deceptive statements, Plaintiff would have acted differently and/or would not have paid Defendants money to purchase the Dress and the

CLASS ACTION COMPLAINT

- 38 -

HATTIS & LUKACS
1401 Twenty-First Street, Suite 400
Sacramento, CA 95811
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1 Hoodie.

2    197.   Old Navy's false advertising scheme has harmed all of its New Jersey customers

3 by fraudulently increasing demand for its products, thereby shifting the demand curve and

4 enabling Old Navy to charge its customers more than it otherwise could have charged and to

5 generate more sales than it otherwise would have generated.

6    198.   Plaintiff Tripicchio and the New Jersey In-Store Class did not enjoy the actual

7 discounts Old Navy represented to them, and the products were not in fact worth the inflated

8 amount that Old Navy represented to them (i.e., the products were not actually worth the

9 fictitious and invented list price).

10   199.   Pursuant to N.J.S.A. § 56:8-10 of the NJCFA, Plaintiff Tripicchio seeks, *inter*

11 *alia*, actual damages, treble damages, and injunctive relief for herself and the New Jersey In-

12 Store Class.

13

**COUNT VI**
**Violation of the New Jersey Truth in Consumer Contract, Warranty and Notice Act**
**N.J.S.A. § 56:12-14, *et seq.***
**(On Behalf of the New Jersey In-Store Class)**

14

15

16   200.   Plaintiff Brenda Tripicchio realleges and incorporates Paragraphs 1 – 118 and

17 184 – 199.

18   201.   This count is pleaded in the alternative by Plaintiff Brenda Tripicchio on behalf

19 of herself and the New Jersey In-Store Class.

20   202.   Plaintiff Tripicchio and the New Jersey In-Store Class members are

21 "consumers" within the meaning of N.J.S.A. §§ 56:12-15 and 16.

22   203.   Defendants Old Navy, LLC, Old Navy (Apparel), LLC, Old Navy Holdings,

23 LLC, GPS Services, Inc., The Gap, Inc., and each Doe defendant are "sellers" within the

24 meaning of N.J.S.A. §§ 56:12-15 and 16.

25   204.   The advertisements and representations of reference prices and discounts in the

26 Old Navy and Old Navy Outlet brick-and-mortar stores are both a consumer "notice" and

27 "warranty" within the meaning of N.J.S.A. §§ 56:12-15 and 16.

28   205.   By the acts alleged herein, Defendants have violated N.J.S.A. § 56:12-16

CLASS ACTION COMPLAINT

- 39 -

HATTIS & LUKACS
1401 Twenty-First Street, Suite 400
Sacramento, CA 95811
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1   because, in the course of Defendants' business, Defendants have offered written consumer

2   notices and warranties to Plaintiff Tripicchio and the New Jersey In-Store Class which

3   contained provisions that violated their clearly established legal rights under state law and

4   federal regulations, within the meaning of N.J.S.A. § 56:12-15. Specifically, Defendants' in-

5   store discount signage and reference prices are a consumer "notice" and/or "sign" within the

6   meaning of N.J.S.A. § 56:12-15.

7        206.   The in-store discount signage and reference prices which were presented and

8   shown by Defendants to Plaintiff Tripicchio and the New Jersey In-Store Class violated their

9   clearly established rights under 16 C.F.R. § 233.1 to be free of false discounts and the use of

10  fictitious former prices in advertising, as well as their rights under N.J.A.C. 13:45A-9.3(a)(3)

11  and 13:45A-9.4(a)(5) and (6), which require a seller advertising a purported percentage-off

12  discount and/or a price comparison to affirmatively state in writing the basis for the discount

13  and the source of the price which is being used for comparison, including whether that price

14  was charged by the seller or its competitors and when and where that former price was

15  previously charged.

16       207.   Pursuant to N.J.S.A. § 56:12-17, Plaintiff Tripicchio seeks a statutory penalty of

17  $100 for herself and each New Jersey In-Store Class member, as well as actual damages and

18  attorneys' fees and costs.

19                              **PRAYER FOR RELIEF**

20       208.   In order to prevent injury to the general public, Plaintiffs Anastasha Barba and

21  Brenda Tripicchio each individually request that the Court enter a public injunction enjoining

22  Defendants from advertising false reference prices and/or false discounts;

23       209.   Further, on behalf of themselves and the proposed Class, Plaintiffs request that

24  the Court order relief and enter judgment against Defendants as follows:

25            a.   Declare this action to be a proper class action, certify the Class, and

26  appoint Plaintiffs and their counsel to represent the Class;

27            b.   Order disgorgement or restitution, including, without limitation,

28  disgorgement of all revenues, profits and/or unjust enrichment that each Defendant obtained,

CLASS ACTION COMPLAINT

- 40 -

HATTIS & LUKACS
1401 Twenty-First Street, Suite 400
Sacramento, CA 95811
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1  directly or indirectly, from Plaintiffs and the members of the Class or otherwise as a result of
2  the unlawful conduct alleged herein;

3          c.     Permanently enjoin each Defendant from the unlawful conduct alleged
4  herein;

5          d.     Retain jurisdiction to police each Defendant's compliance with the
6  permanent injunctive relief;

7          e.     Order each Defendant to pay damages and restitution to Plaintiffs and
8  the Class in an amount to be proven at trial;

9          f.     Order each Defendant to pay punitive and exemplary damages to the
10  extent allowed by law;

11          g.     Order each Defendant to pay attorneys' fees, costs, and pre-judgment
12  and post-judgment interest to the extent allowed by law; and

13          h.     Provide all other relief to which Plaintiffs and the Class may show
14  themselves justly entitled.

15

16  **JURY DEMAND**

17  Plaintiffs ANASTASHA BARBA and BRENDA TRIPICCHIO, on behalf of
themselves and on behalf of the Class, demand a trial by jury on all issues so triable.

18

19

20  DATED this 18th day of July, 2019.

21  Presented by:

22  HATTIS & LUKACS

23  By:

24  Daniel M. Hattis (SBN 232141)
Paul Karl Lukacs (SBN 197007)
25  HATTIS & LUKACS
1401 Twenty-First Street, Suite 400
26  Sacramento, California 95811
Telephone: (425) 233-8650
27  Facsimile: (425) 412-7171
Email: dan@hattislaw.com
28  Email: pkl@hattislaw.com

CLASS ACTION COMPLAINT

- 41 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Stephen P. DeNittis, Esq.*
Shane T. Prince, Esq.*
DENITTIS OSEFCHEN PRINCE, P.C.
5 Greentree Centre, Suite 410
525 Route 73 N.
Marlton, New Jersey 08057
Telephone: (856) 797-9951
Facsimile: (856) 797-9978
Email: sdenittis@denittislaw.com
Email: sprince@denittislaw.com

*Attorneys for Plaintiffs and the Proposed Class*

*\*Pro hac vice application to be submitted*

CLASS ACTION COMPLAINT

- 42 -

**HATTIS & LUKACS**
1401 Twenty-First Street, Suite 400
. Sacramento, CA 95811
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

# EXHIBIT A

1  Daniel M. Hattis (SBN 232141)
   Paul Karl Lukacs (SBN 197007)
2  HATTIS & LUKACS
   1401 Twenty-First Street, Suite 400
3  Sacramento, CA 95811
   Telephone: (425) 233-8650
4  Facsimile: (425) 412-7171
   Email: dan@hattislaw.com
5  Email: pkl@hattislaw.com

6  Stephen P. DeNittis, Esq. (Pro Hac Vice forthcoming)
   Shane T. Prince, Esq. (Pro Hac Vice forthcoming)
7  DENITTIS OSEFCHEN PRINCE, P.C.
   5 Greentree Centre, Suite 410
8  525 Route 73 N.
   Marlton, New Jersey 08057
9  Telephone: (856) 797-9951
   Facsimile: (856) 797-9978
10 Email: sdenittis@denittislaw.com
   Email: sprince@denittislaw.com

11

12 *Attorneys for Plaintiffs and the Proposed Class*

13              SUPERIOR COURT OF THE STATE OF CALIFORNIA

14                  CITY AND COUNTY OF SAN FRANCISCO

15                           UNLIMITED CIVIL

16 ANASTASHA BARBA and              Case No. _____
   BRENDA TRIPICCHIO,
17 for Themselves, as Private Attorney
   Generals, and/or On Behalf Of All    **DECLARATION OF DANIEL M.
18 Others Similarly Situated,           HATTIS PURSUANT TO THE
                                        CALIFORNIA CONSUMERS LEGAL
19                                      REMEDIES ACT
   Plaintiffs,                         (CAL. CIVIL CODE § 1780(d))**
20
21 v.                                  **[FILED CONCURRENTLY
                                        WITH COMPLAINT]**
22 OLD NAVY, LLC;
   OLD NAVY (APPAREL), LLC;
23 OLD NAVY HOLDINGS, LLC;
   GPS SERVICES, INC.;
24 THE GAP, INC.;
   and DOES 1-20, inclusive,
25
26 Defendants.
27
28

DECLARATION OF DANIEL M. HATTIS
REGARDING CLRA VENUE                  - 1 -

1    I, DANIEL M. HATTIS, hereby declare and state as follows:

2         1.    I am over the age of 18 years, I am a member in good standing of the State Bar

3    of California, and I am an attorney of record in this civil action, in which I am representing

4    Plaintiffs Anastasha Barba and Brenda Tripicchio. The facts contained herein are based on my

5    personal knowledge except as to facts stated upon information and belief and, as to those, I

6    believe it to be true.

7         2.    This civil action pleads a cause of action for violation of the California

8    Consumers Legal Remedies Act ("CLRA") against Defendants Old Navy, LLC, Old Navy

9    (Apparel), LLC, Old Navy Holdings, LLC, GPS Services, Inc., and The Gap, Inc. (collectively,

10   the "Old Navy Defendants"). This civil action has been commenced in a county described in

11   Section 1780(d) of the California Civil Code as a proper place for the trial of the action.

12        3.    This action is being commenced in the City and County of San Francisco

13   because that is a county in which each of the Old Navy Defendants is doing business.

14        4.    Each of the Old Navy Defendants is doing business in the City and County of

15   San Francisco by, without limitation, advertising and selling its goods and services through its

16   brick-and-mortar retail stores located in the City and County of San Francisco, and by

17   advertising and selling its goods through its website (http://oldnavy.gap.com) to persons,

18   including consumers, located in the City and County of San Francisco.

19        5.    In addition, each of the Old Navy Defendants has its headquarters, executive

20   office, and/or principal place of business or nerve center in the City and County of San

21   Francisco, California.

22        I declare under penalty of perjury under the laws of the State of California that the

23   foregoing is true and correct.

24        Executed on July 18, 2019, in King County, State of Washington.

25

26                          DANIEL M. HATTIS

27

28

---

DECLARATION OF DANIEL M. HATTIS
REGARDING CLRA VENUE                 - 2 -

# EXHIBIT B



**HATTIS & LUKACS**
**Attorneys at Law**

**Washington Office**
400 108th Ave NE, Ste 500
Bellevue, WA 98004
Phone: 425.233.8650
www.hattislaw.com

Daniel M. Hattis, Esq.
425.233.8628
dan@hattislaw.com

California Office
1401 21st Street, Ste 400
Sacramento, CA 95811

July 18, 2019

**VIA CERTIFIED MAIL RETURN RECEIPT REQUESTED**

Sonia Syngal, President and CEO                     Art Peck, President and CEO
Old Navy, LLC; Old Navy (Apparel), LLC; and         The Gap, Inc.; and
Old Navy Holdings, LLC                              GPS Services, Inc.
2 Folsom Street                                     2 Folsom Street
San Francisco, California 94105                     San Francisco, California 94105

Re:     Notice of Violation of California Consumers Legal Remedies Act
        My Clients: Anastasha Barba and Brenda Tripicchio

Dear Ms. Syngal and Mr. Peck:

        This law firm, together with DeNittis Osefchen Prince, P.C., represents Anastasha Barba
and Brenda Tripicchio, who purchased Old Navy products which Old Navy advertised with a
false discount from a false and misleading reference price. We send this letter pursuant to the
California Consumers Legal Remedies Act, California Civil Code Section 1750 *et seq.*
("CLRA") to notify Old Navy, LLC; Old Navy (Apparel), LLC; Old Navy Holdings, LLC; The
Gap, Inc.; and GPS Services, Inc. ("Old Navy") that its practice of advertising false and
misleading reference prices and discounts violates the CLRA. We demand that Old Navy rectify
its violations within thirty (30) days of receipt of this letter.

**False Advertising Scheme.**

        For years, Old Navy has perpetrated a massive false discount advertising scheme across
nearly all of its Old Navy-branded products, across all of its sales channels (i.e, in all of its brick-
and-mortar Old Navy and Old Navy Outlet stores, and on the Old Navy website). Old Navy
advertises perpetual or near perpetual discounts from Old Navy's self-created list prices for the
products. Old Navy represents its list prices to be the "regular" and normal prices of the items,
and the list prices function as reference prices from which the advertised discounts and
percentage-off sales are calculated.

        Old Navy's discounts and reference prices are false, because Old Navy rarely if ever
offers the products at the advertised list price. Old Navy invents inflated and fictitious list prices
in order to enable it to advertise perpetual store-wide "sale" events and product discounts to
induce customers to purchase its products. Old Navy's marketing plan is to trick its customers
into believing that its products are worth, and have a value equal to, the inflated list price, and

July 18, 2019
Page 2

that the lower advertised sale price represents a special bargain—when in reality and unbeknownst to the customer, the "sale" price is approximately equal to Old Navy's usual and normal selling price for the product.

**Anastasha Barba.** On March 5, 2019, Ms. Barba, a California resident, visited the Old Navy website and purchased several items including a pair of Mid-Rise Super Skinny Jeans for Women ("Jeans"), Item #715218002. Ms. Barba purchased the Jeans in reliance upon Old Navy's representations that the $15.00 "sale" price (advertised in red text) for these "Best Seller" Jeans was discounted 50% from Old Navy's regular and normal selling price of $29.99 (advertised with a strike-through) for the Jeans. Old Navy made additional discount representations in the online shopping cart, including that Ms. Barba was enjoying a "My Savings" dollar amount which was calculated by totaling the purported discounts from the list prices for the items in her cart. Relying on Old Navy's representations, Ms. Barba reasonably believed that the Jeans had a value of, and were worth, $29.99, and that she had enjoyed a 50%, or $14.99, savings from Old Navy's regular and usual price for the Jeans.

However, Old Navy's representations were false and deceptive. In reality, and unbeknownst to Ms. Barba, Old Navy had very rarely (only 12 out of the past 486 days, or 2.47% of the time) previously offered the Jeans at the purported regular price of $29.99. And after Ms. Barba's purchase on March 5, 2019, through to the present day, Old Navy never offered the Jeans at the $29.99 purported regular price. In fact on June 5, 2019, Old Navy raised the purported regular price of the product to $34.99, despite this new reference price having no foundation whatsoever—consistent with Old Navy's policy of inventing reference prices out of thin air. Contrary to Old Navy's representations, the $15.00 price Ms. Barba paid for the Jeans was simply Old Navy's usual and normal selling price for the Jeans.

That same day in the same web browsing session, Ms. Barba also purchased a Printed Crew-Neck Tee for Toddler ("Toddler Tee"), Item #392277142, from the Old Navy website. Ms. Barba purchased the Toddler Tee in reliance upon Old Navy's representations that the $5.00 "sale" price (advertised in red text) for the Toddler Tee was discounted 50% from Old Navy's regular and normal selling price of $9.99 (advertised with a strike-through) for the Toddler Tee, which Old Navy labeled as a "Hot Deal." Old Navy made additional discount representations in the online shopping cart, including that Ms. Barba was enjoying a "My Savings" dollar amount which was calculated by totaling the purported discounts from the list prices for the items in her cart. Relying on Old Navy's representations, Ms. Barba reasonably believed that the Toddler Tee had a value of, and was worth, $9.99, and that she had enjoyed a 50%, or $4.99, savings from Old Navy's regular and usual price for the Toddler Tee.

However, Old Navy's representations were false and deceptive. In reality, and unbeknownst to Ms. Barba, Old Navy had never offered the Toddler Tee at the supposed regular price of $9.99 in the prior 60 days. And after Ms. Barba's purchase on March 5, 2019, through to the present day, Old Navy continued to never offer the Toddler Tee at the $9.99 reference price. In fact, the $5.00 price she paid was simply Old Navy's usual and normal selling price for the Toddler Tee.

**Brenda Tripicchio**. On March 24, 2019, Brenda Tripicchio, a New Jersey resident, visited the Old Navy Outlet store located at 100 Premium Outlets Drive, Blackwood, New Jersey. While at the store, Ms. Tripicchio saw prominent signs that advertised significant sales

and percentage-off discounts throughout the store. Ms. Tripicchio purchased several items that day, including a Jersey Swing Dress for Women ("Dress"), Item #390760051. Ms. Tripicchio viewed signage adjacent to the Dress advertising that the Dress was on sale for $20.00. Ms. Barba viewed the price tag attached to the Dress, which showed a price of $29.99.

Relying on Old Navy's representations, Ms. Tripicchio reasonably believed that the Dress was normally offered and sold by Old Navy for the $29.99 list price. Ms. Tripicchio reasonably believed that the Dress was thereby worth and had a value of $29.99. Ms. Tripicchio reasonably believed that the advertised sale price of $20.00 represented a special bargain, where Old Navy was temporarily offering the Dress for $9.99 off (i.e., 33% off) of the regular and normal selling price of $29.99. Relying on Old Navy's representations, Ms. Tripicchio purchased the Dress.

Also while at the Old Navy Outlet store that day, Ms. Tripicchio saw and purchased a Zip-Front Hoodie for Boys ("Hoodie"), Item #287720301. Ms. Tripicchio viewed signage adjacent to the Hoodie advertising that the Hoodie was "20% Off." Ms. Tripicchio viewed the price tag attached to the Hoodie, which showed a price of $19.99.

Relying on Old Navy's representations, Ms. Tripicchio reasonably believed that the Hoodie was normally offered and sold by Old Navy for the $19.99 reference price. Ms. Tripicchio reasonably believed that the Hoodie was thereby worth and had a value of $19.99. Ms. Tripicchio reasonably believed that the advertised savings of 20% off represented a special bargain, where Old Navy was temporarily offering the Hoodie for $4 off of the regular and normal selling price of $19.99. Relying on Old Navy's representations, Ms. Tripicchio purchased the Hoodie.

On the paper receipt Ms. Tripicchio received at the cash register and which Ms. Tripicchio viewed, Old Navy made additional product pricing and value representations regarding the Dress and the Hoodie. Old Navy printed on the receipt that the price for the Dress was "1 @ 29.99", and directly below that Old Navy printed "Item Discount. -9.99". Old Navy printed on the receipt that the price for the Hoodie was "1 @ 19.99", and directly below that Old Navy printed "Item Discount 20% -4.00". At the bottom of the receipt, Old Navy printed in large text (which was nearly twice the font size of the text on the rest of the receipt) the phrase "You Saved XXX.XX", where XXX.XX was the total dollar amount of all the purported "Item Discount[s]" for the products she purchased that day, including the $9.99 discount she purportedly received on the Dress and the $4.00 discount she purportedly received on the Hoodie. These representations on the receipt further indicated to Ms. Tripicchio that the Dress had a value of, and was normally and usually offered for, $29.99, and that the lower $20.00 price she paid was a bargain price after Old Navy applied a special $9.99 discount. These representations on the receipt likewise indicated to Ms. Tripicchio that the Hoodie had a value of, and was normally and usually offered for, $19.99, and that the lower $15.99 price she paid was a bargain price after Old Navy applied a special $4.00 (20% off) discount.

However, Old Navy's reference price and discount representations were false and deceptive. In reality, and unbeknownst to Ms. Tripicchio, Old Navy had rarely if ever offered the Dress for $29.99 or the Hoodie for $19.99. Contrary to Old Navy's representations, the $20 purportedly discounted price she paid for the Dress was in fact approximately equal to Old Navy's usual and normal selling price for the Dress. And the $15.99 price Ms. Tripicchio paid

July 18, 2019
Page 4

for the supposedly discounted Hoodie was *higher* than the true regular selling price for the Hoodie.

## CLRA Violations.

Old Navy's nationwide fraudulent advertising scheme harms consumers like Anastasha Barba and Brenda Tripicchio by causing them to pay more than they otherwise would have paid and to buy more than they otherwise would have bought. Customers do not enjoy the actual discounts Old Navy represents to them, and the products are not in fact worth the inflated amount that Old Navy represents to them (i.e., the products are not actually worth the fictitious and invented list price).

Old Navy's material misrepresentations, active concealment, and failures to disclose violated the CLRA in the following manner:

1. Old Navy misrepresented that its products had characteristics, benefits, or uses that they did not have (Cal. Civ. Code § 1770(a)(5));

2. Old Navy advertised its products with an intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9));

3. Old Navy made false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions. (Cal. Civ. Code § 1770(a)(13)); and

4. Old Navy represented that its products were supplied in accordance with previous representations when they were not (Cal. Civ. Code § 1770(a)(16)).

## Demand.

We demand that within thirty (30) days of receiving this letter, Old Navy agree to: (1) refrain from engaging in the deceptive practices described above at any time in the future; and (2) compensate all Old Navy customers who have been harmed by these practices. If Old Navy refuses to provide the demanded relief within thirty (30) days, we will seek compensatory and punitive damages, restitution, and any other appropriate equitable relief under the CLRA. To be clear, this demand is being made on a class-wide basis. Any individual offers for relief to Ms. Barba or Ms. Tripicchio will not be adequate or sufficient.

If you have any questions regarding this notice and demand, feel free to contact me at (425) 233-8628 or dan@hattislaw.com.

Very truly yours,

Daniel M. Hattis

cc:  Stephen P. DeNittis, Esq.

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Daniel M. Hattis, Esq. (SBN 232141)<br>HATTIS & LUKACS<br>1401 Twenty-First Street, Suite 400<br>Sacramento, CA 95811<br>TELEPHONE NO.: (425) 233-8650     FAX NO.: (425) 412-7171<br>ATTORNEY FOR *(Name):* Anastasha Barba and Brenda Tripicchio | FOR COURT USE ONLY<br>**FILED**<br>San Francisco County Superior Court<br>JUL 18 2019<br>CLERK OF THE COURT<br>BY: Sandra Velin<br>Deputy Clerk |
|---|---|

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS: 400 McAllister St.
MAILING ADDRESS: 400 McAllister St.
CITY AND ZIP CODE: San Francisco 94102
BRANCH NAME: Civic Center Courthouse

CASE NAME:
Anastasha Barba et al. v. Old Navy, LLC et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER:<br>CGC-19-577743 |
|---|---|---|---|---|
| ☑ Unlimited<br>(Amount demanded exceeds $25,000) | ☐ Limited<br>(Amount demanded is $25,000 or less) | ☐ Counter   ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation |
|---|---|---|
| ☐ Auto (22) | ☐ Breach of contract/warranty (06) | **(Cal. Rules of Court, rules 3.400–3.403)** |
| ☐ Uninsured motorist (46) | ☐ Rule 3.740 collections (09) | ☐ Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | ☐ Other collections (09) | ☐ Construction defect (10) |
| **Damage/Wrongful Death) Tort** | ☐ Insurance coverage (18) | ☐ Mass tort (40) |
| ☐ Asbestos (04) | ☐ Other contract (37) | ☐ Securities litigation (28) |
| ☐ Product liability (24) | **Real Property** | ☐ Environmental/Toxic tort (30) |
| ☐ Medical malpractice (45) | ☐ Eminent domain/Inverse | ☐ Insurance coverage claims arising from the |
| ☐ Other PI/PD/WD (23) |   condemnation (14) |   above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | ☐ Wrongful eviction (33) |   types (41) |
| ☑ Business tort/unfair business practice (07) | ☐ Other real property (26) | **Enforcement of Judgment** |
| ☐ Civil rights (08) | **Unlawful Detainer** | ☐ Enforcement of judgment (20) |
| ☐ Defamation (13) | ☐ Commercial (31) | **Miscellaneous Civil Complaint** |
| ☐ Fraud (16) | ☐ Residential (32) | ☐ RICO (27) |
| ☐ Intellectual property (19) | ☐ Drugs (38) | ☐ Other complaint *(not specified above)* (42) |
| ☐ Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| ☐ Other non-PI/PD/WD tort (35) | ☐ Asset forfeiture (05) | ☐ Partnership and corporate governance (21) |
| **Employment** | ☐ Petition re: arbitration award (11) | ☐ Other petition *(not specified above)* (43) |
| ☐ Wrongful termination (36) | ☐ Writ of mandate (02) | |
| ☐ Other employment (15) | ☐ Other judicial review (39) | |

2. This case ☐ is   ☑ is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties     d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel     e. ☐ Coordination with related actions pending in one or more courts
      issues that will be time-consuming to resolve        in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence     f. ☐ Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a.☑ monetary   b.☑ nonmonetary; declaratory or injunctive relief   c.☑ punitive
4. Number of causes of action *(specify):* 6: (1) CLRA; (2) FAL; (3) UCL; (4) Pub. Inj. Relief; (5) NJSA § 56:8-1; (6) NJSA § 56:12-14
5. This case ☑ is   ☐ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 7/18/2019
Daniel M. Hattis, Esq., Counsel for Plaintiff
_____     ▶ _____
(TYPE OR PRINT NAME)                              (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courtinfo.ca.gov* |
|---|---|---|

BY FAX
ONE LEGAL LLC

**CM-01**

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
Uninsured Motorist (46) *(if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
        Wrongful Death
Product Liability *(not asbestos or
    toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice–
        Physicians & Surgeons
    Other Professional Health Care
        Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip
        and fall)
    Intentional Bodily Injury/PD/WD
        (e.g., assault, vandalism)
    Intentional Infliction of
        Emotional Distress
    Negligent Infliction of
        Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
    Practice (07)
Civil Rights (e.g., discrimination,
    false arrest) *(not civil
    harassment)* (08)
Defamation (e.g., slander, libel)
    (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
        *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease
        Contract *(not unlawful detainer
        or wrongful eviction)*
    Contract/Warranty Breach–Seller
        Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
        Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
        Case
Insurance Coverage *(not provisionally
    complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
    Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent
    domain, landlord/tenant, or
    foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
        Case Matter
    Writ–Other Limited Court Case
        Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
        Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
    *(arising from provisionally complex
    case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of
        County)
    Confession of Judgment *(non-
        domestic relations)*
    Sister State Judgment
    Administrative Agency Award
        *(not unpaid taxes)*
    Petition/Certification of Entry of
        Judgment on Unpaid Taxes
    Other Enforcement of Judgment
        Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
    above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-
        harassment)*
    Mechanics Lien
    Other Commercial Complaint
        Case *(non-tort/non-complex)*
    Other Civil Complaint
        *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
    Governance (21)
Other Petition *(not specified
    above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
        Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
        Claim
    Other Civil Petition

CM-010 [Rev. July 1, 2007]                    **CIVIL CASE COVER SHEET**